Alsana X. CARUTH, Plaintiff,

v.

Richard J. GEDDES, Defendant.

No. 77 C 1042.

United States District Court,
N. D. Illinois, E. D.

Jan. 16, 1978.

Alsana Caruth, pro se.

Richard Steck, Chicago, Ill, for defendant.

## MEMORANDUM DECISION

MARSHALL, District Judge.

This is a civil rights action brought by Alsana X. Caruth, an Illinois prisoner, against Richard J. Geddes, a lawyer with the Illinois Appellate Defender. Caruth was convicted of armed robbery in the Circuit Court of Cook County, Illinois, and sentenced to a term in the Correctional Center at Pontiac, Illinois. On appeal Geddes was appointed to represent him. On March 15, 1977, Geddes filed with the Appellate Court of Illinois, First Judicial District, a motion to withdraw as counsel on appeal together with a supporting brief, as required by *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Copies of the motion and brief were served on Caruth and he was given time to respond, which he did. On June 20, 1977, the court granted Geddes' motion.

On March 29, 1977, before the Appellate Court had granted Geddes' motion, Caruth filed the instant action charging that Geddes had violated Caruth's civil rights under 42 U.S.C. § 1983 *et seq.* The complaint alleges that Geddes, acting under color of state law, withdrew as counsel for Caruth and in so doing maliciously deprived Caruth of his due process and equal protection rights. Caruth claims that Geddes submitted to the appellate court a brief "attacking all the plaintiff's points of appeal,"

"raising matters told to him in letters and conversations," (Complaint ¶ 5) tending purposefully to mislead the appellate court and lessen Caruth's chances of success in the appeal of his criminal conviction. The complaint also alleges that Geddes "acted outside the good faith ethics" of the legal profession, and "flagrantly went beyond the scope of an attorney for the defense on appeal." (Complaint ¶¶ 5, 6). Caruth seeks damages in the amount of $50,000 under 28 U.S.C. § 1343, and also asks that Geddes be disbarred. Section 1343 confers jurisdiction upon this court.

Geddes has filed a motion to dismiss for failure to state a claim on which relief may be granted. The motion is based on three alternative theories: 1) a public defender enjoys an absolute immunity from liability under the civil rights act; 2) a public defender enjoys a qualified immunity; and 3) a public defender does not act under color of state law.

■ The defense of qualified immunity is not available against the charges made in the complaint, by way of a motion to dismiss. While it is true that this Circuit has recognized a public defender enjoys qualified immunity from 1983 actions, *John v. Hurt*, 489 F.2d 786 (7th Cir. 1973); *Beaver v. Carey*, 426 F.Supp. 301 (N.D.Ill.1977), the defense does not defeat a claim of intentional or malicious harm. *See John* at 788. Caruth's complaint charges acts of malicious deprivation of his constitutional rights in that the public defender was "acting in bad faith," had "denied the plaintiff . . . fair play," and "acting under the color of state law . . . has done the plaintiff's appeal great . . . legal, emotional, physiological harm; and has acted outside the good faith ethics that are supposed to govern the legal conduct, and practice, of any attorney." (Complaint ¶¶ 4, 5). Therefore, the complaint could not be dismissed at the pleading stage on the basis of the defendant's qualified immunity.

■ An alternative contention made by the defendant is that public defenders, like prosecuting attorneys, *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128

(1976), enjoy absolute immunity from actions brought under § 1983. Such immunity defeats a suit at the outset, so long as the official's actions are within the scope of his or her official duties; no inquiry is made as to whether the actions were undertaken with bad faith or malice. *Imbler, supra* at 419 n. 13, 96 S.Ct. 984. Geddes points out that the three circuits which have squarely addressed the issue of whether a public defender is absolutely immune have decided in the affirmative. *Miller v. Barilla*, 549 F.2d 648 (9th Cir. 1977); *Minns v. Paul*, 542 F.2d 899 (4th Cir. 1976); *Brown v. Joseph*, 463 F.2d 1046 (3d Cir. 1972).

*Minns* involved a § 1983 claim brought by a prisoner charging a public defender with improper delay in filing a petition for habeas corpus. In finding an absolute immunity, the court noted that the defense of even frivolous suits would consume the energies of state-subsidized attorneys. In the typical attorney-client relationship, the court reasoned, the potential costs to the client operate as an economic brake on frivolous grievances, and the private attorney may simply turn away those potential clients who persist in urging claims which are patently unsound. The public defender, on the other hand, has virtually no control over which clients to accept or reject. 542 F.2d at 901–902. Following *Imbler*, the Fourth Circuit concluded that only an absolute immunity would free a public defender from the need to weigh each decision regarding the representation of the client in terms of the potential for personal liability.

> The resentment of unsuccessful litigants may easily blossom into § 1983 litigation, and the defense of even frivolous § 1983 suits would consume the energy of state-subsidized attorneys which should be devoted to representing the interests of other indigent clients. 542 F.2d at 902.

The court noted that the nature of the attorney's work requires making strategic decisions and thus leaves an attorney particularly vulnerable to § 1983 suits. Absent immunity, the threat of § 1983 claims might have an adverse subconscious effect on the judgment of a judicial officer whose primary duty is to find the truth and apply the law. 542 F.2d at 902, citing *Imbler*, 424 U.S. at 409, 96 S.Ct. 984.

The Ninth Circuit, in *Miller*, stressed the fact that the objectives of recruiting and retaining able public defenders and encouraging their unfettered exercise of discretion would only be achieved by a grant of absolute immunity. The court found the analysis of the Fourth Circuit in *Minns* persuasive and followed its reasoning. 549 F.2d at 649.

*Brown v. Joseph*, decided by the Third Circuit before *Imbler*, extended absolute immunity to public defenders. That court said that it perceived "no valid reason to extend this immunity to state and federal prosecutors and judges and to withhold it from state-appointed and state-subsidized defenders." 463 F.2d at 1048.

The Seventh Circuit Court of Appeals has not had occasion to address the question of the public defender's immunity since *John v. Hurt, supra*. There the Court likened the immunity of the public defender to that of the prosecutor, although at that time prosecuting attorneys were considered to have only a qualified and not an absolute immunity:

> [W]e conclude that public defenders, *like state prosecutors*, and state and city attorneys, enjoy a qualified immunity for acts performed in the discharge of their official duties. 489 F.2d at 788 (emphasis added).

Although the Seventh Circuit did not elaborate on the similarity between the public defender and the prosecuting attorney, the court's language suggests that whatever the immunity accorded the prosecutor, the public defender's immunity should be the same.

Since *John v. Hurt* was decided, the Supreme Court has held that a prosecuting attorney, in initiating, prosecuting or presenting the state's case, is absolutely immune from liability in actions brought under § 1983. *Imbler v. Pachtman*, 424 U.S. at 431, 96 S.Ct. 984. The *Imbler* case was a civil rights action brought by a convicted defendant against the prosecutor. The complaint alleged that the prosecutor

knowingly had used false testimony and suppressed at trial material evidence favorable to the defendant. The prosecutor claimed an absolute immunity for actions taken in initiating the state's case. The Court's holding that the prosecutor was absolutely immune was based in large part upon the fact that at common law prosecutors enjoyed "quasi-judicial" immunity when prosecuting the state's case. 424 U.S. at 417–422, 96 S.Ct. 984. Earlier the Court had implied that judicial immunity would be preserved under § 1983 actions as well as actions at common law. *Pierson v. Ray,* 386 U.S. 547, 554–555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). The *Imbler* Court made clear that quasi-judicial immunity extends to those activities which cast the prosecutor in the role of an advocate and are an "integral part of the judicial process." These activities are "intimately associated with the judicial phase of the criminal process, and thus [are] functions to which the reasons for absolute immunity apply with full force." 424 U.S. at 430, 96 S.Ct. at 995.

In addition to the historical foundations of the immunity, the Court's decision in *Imbler* also focused upon the policy considerations underlying prosecutorial immunity:

> [H]arassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by the public trust. . . . The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate. 424 U.S. at 423, 424–425, 96 S.Ct. at 991.

The Court considered whether a qualified immunity would afford sufficient protection and concluded that it would not:

> It is fair to say, we think, that the honest prosecutor would face greater difficulty in meeting the standards of qualified im-

munity than other executive or administrative officials. Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials. 424 U.S. at 425–426, 96 S.Ct. at 992.

Public defender offices have been created only recently to conform with standards of due process for criminal defendants, *see Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and so they do not share with the prosecutor's office a history of immunity rooted in common law. However, we have concluded that public defender activities in representing an indigent defendant are as closely associated with the judicial process as are the prosecutor's, and the policy considerations underlying the prosecutor's immunity which were enunciated in *Imbler* are equally important in the case of public defenders.

In *John v. Hurt,* 489 F.2d 786, 788 (7th Cir. 1973), the Seventh Circuit noted that the extension of a *qualified* immunity to public defenders would "encourage their free exercise of discretion in the performance of professional obligations, as well as aid in the recruitment of able men and women for public defender positions." In view of the Supreme Court's holding in *Imbler,* that an absolute immunity is required to accomplish a similar purpose in the case of the prosecutor, we feel that an absolute immunity should be extended to the public defender's office. While qualified immunity affords some protection to the diligent public defender, we agree with the Fourth Circuit, *Minns v. Paul,* 542 F.2d 899, 902 (4th Cir. 1976), that "absent absolute immunity, [the public defender] will be called upon to expend considerable time and energy in defending the suit beyond the pleading stage."

Like prosecutors, public defenders operate under serious time constraints. The

defender's role in the representation of indigent defendants involves considerable decision-making and thus leaves the defender particularly vulnerable to charges of violating § 1983 rights. The public defender's need to use unfettered discretion and to maintain a high degree of professionalism as an officer of the court requires that he or she not be forced to weigh each decision in terms of the personal liability that might attach. The defender's need for immunity is comparable to that of the prosecutor.

The potential for personal liability is particularly great in *Anders*-type situations. The Supreme Court has said that a public defender who has determined that an appeal would be wholly frivolous may withdraw from a case by making an appropriate motion to the court. *Anders,* 386 U.S. at 744, 87 S.Ct. 1396. If the court approves the request to withdraw, the prisoner is likely to be resentful and may express this resentment by filing suit against the public defender personally. Defending such suits beyond the pleading stage would add to the already heavy workload of the public defender and take valuable time away from the defending of other indigent clients.[1]

In view of these considerations, we hold that a public defender enjoys an absolute immunity from § 1983 actions for damages when acting within the scope of his or her official duties. Liability may attach only when the acts complained of were done outside the scope of duty.

■ Caruth alleges that defendant "acted outside the good faith ethics of the legal profession" and "went beyond the scope of an attorney for the defense on appeal" (Complaint ¶¶ 5, 6). Construing the complaint liberally, *Chapman v. Kleindienst,* 507 F.2d 1246 (7th Cir. 1974), we will consider that plaintiff has charged that the filing of the brief and the including of certain information therein were outside the scope of the official duties of the public defender. Even assuming the truth of these allegations, as we must on a motion to dismiss, we conclude that as a matter of law, the acts alleged in the complaint fall well within the scope of a public defender's duties.

Plaintiff's charges focus on the filing of the motion to withdraw and the accompanying brief. The filing of a brief was compelled by the decision of the Supreme Court in *Anders v. California, supra.* Under the principles of *Anders,* a court-appointed attorney who, after conscientious examination of the case, has determined that his or her client's appeal is wholly frivolous, may properly advise the court of this conclusion and request permission to withdraw as counsel. 386 U.S. at 744, 87 S.Ct. 1396. *Anders* requires that such a request be accompanied by a brief referring to any possible points in the record which might arguably support the appeal. Defendant's brief complied with this requirement. Plaintiff does not claim that the factual matters raised in Geddes' brief were irrelevant to the appeal, but only that defendant had learned of these facts "in letters and conversations" (Complaint ¶ 5), presumably between himself and plaintiff. We conclude that the filing of the brief and the inclusion

---

1. We recognize that our holding today leaves unresolved the question whether the same immunity should be granted to court-appointed and private attorneys engaged in criminal defense work as is granted to public defenders in the direct employ of the state. At least one commentator has suggested that judicial immunity should extend to all of these participants in the criminal justice process. See Nakles, *Criminal Defense Lawyer: The Case for Absolute Immunity from Civil Liability,* 81 Dick.L. Rev. 229 (1977). Arguably, the principles of *Imbler* could be applied equally to privately retained and court-appointed private attorneys engaged in criminal defense. However, our holding in the case at bar is limited to actions brought under § 1983, and therefore, we leave the resolution of this problem to another day. Section 1983 requires action "under color of state law." Privately retained and court-appointed private attorneys have unanimously been held not to act under color of state law. *United States ex rel. Simmons v. Ziblich,* 542 F.2d 259 (5th Cir. 1976); *Page v. Sharpe,* 487 F.2d 567 (1st Cir. 1973); *Stewart v. Meeker,* 459 F.2d 669 (3d Cir. 1972); *Szijarto v. Legeman,* 466 F.2d 864 (9th Cir. 1972); *French v. Corrigan,* 432 F.2d 1211 (7th Cir. 1970); *Mulligan v. Schlachter,* 389 F.2d 231 (6th Cir. 1968); *Harris v. Ward,* 418 F.Supp. 660 (S.D.N.Y. 1976); *Ehn v. Price,* 372 F.Supp. 151 (N.D.Ill. 1974). Thus, there is little danger that a § 1983 action against a court-appointed or private attorney would survive the pleading stage.

of relevant factual material therein were acts done in compliance with *Anders* and were therefore within the scope of the public defender's official duties.

■ A liberal construction of the complaint also suggests that plaintiff has charged a breach of the attorney-client relationship in that defendant revealed in his brief to the appellate court matters which he learned in communications with his client. A claim of malpractice or violation of professional ethics is cognizable only under state law, and such a charge could be properly adjudicated by this court only within its pendent jurisdiction. Such claims do not assume constitutional proportions and therefore are not within the scope of § 1983. *Ehn v. Price,* 372 F.Supp. 151, 152 (N.D.Ill.1974). In the case at bar, the constitutional claims are dismissed because of the public defender's immunity against such charges; therefore, the pendent state claims must also be dismissed.

■ The Third Circuit, confronted with questions of law similar to those in the case at bar, indicated some willingness to grant the motion to dismiss either on the basis of absolute immunity or alternatively on the basis that the public defender does not act under color of state law. We, however, feel that these positions are basically inconsistent.

The Seventh Circuit, by way of dicta, has stated that the same factors which suggest that immunity should be extended to a public defender suggest that the public defender acts under color of state law in defending indigent clients. *John v. Hurt,* 489 F.2d 786, 788 (7th Cir. 1973). *United States v. Senak,* 477 F.2d 304 (7th Cir. 1973), also suggests that a public defender might act under color of state law.

Among the Courts of Appeal, only the Tenth Circuit, *Espinoza v. Rogers,* 470 F.2d 1174 (10th Cir. 1972), has directly held that in representing an indigent client, a public defender does not act under color of state law. Several district courts have agreed. *See, e. g., Clark v. Brandom,* 415 F.Supp.

883 (W.D.Mo.1976); *Sanchez v. Murphy,* 385 F.Supp. 1362 (D.Nev.1974).

The *Espinoza* court decided that color of law was lacking because while the public defender's office was created by statute, there was no further control or influence of its operations by the state; once appointed, the public defender's duties are identical to those of a private attorney. 470 F.2d at 1174–1175. The district courts which have concurred have reasoned similarly.

Numerous tests have been employed to determine whether a person acts "under color of state law" or with "state action." [2] In *Roberts v. Acres,* 495 F.2d 57, 59 (7th Cir. 1974), a § 1983 suit, the Seventh Circuit said that a person's conduct is under color of state law if that person is clothed with the authority of the state and purports to act thereunder. Arguably, this test is satisfied when a public defender represents the indigent client, because the defender's appointment flows directly from statutory mandate and from no other authority. *See, e. g.,* Ill.Rev.Stat., ch. 34 §§ 5601–5609.

Some courts have looked for a symbiotic or mutually beneficial relationship between the otherwise private party and the state as evidence of state action. *Burton v. Wilmington Parking Authority,* 365 U.S. 715, 724, 81 S.Ct. 6, 6 L.Ed.2d 45 (1961); *Rackin v. University of Pennsylvania,* 386 F.Supp. 992 (E.D.Pa.1974). Under this test, a relation of interdependence between the state and the office of the public defender would clothe the defender with color of state law. Under Illinois law, the office is created by statute, Ill.Rev.Stat., Ch. 34 §§ 5601–5609, and salaries are set by the county board, § 5605. Thus, the office is entirely dependent upon the state for its existence. The public defender's office in turn fulfills the state's constitutional obligation to provide counsel for criminal defense. *See Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). This give and take relationship might be regarded as an adequate basis for

**2.** In *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966), the Court

noted that the terms "color of state law" and "state action" are synonymous.

finding state action under the symbiosis theory.

The "public function" theory of state action holds that when an otherwise private party performs an essential governmental function, the private party's discharge of that function is taken under color of state law. *Evans v. Newton,* 382 U.S. 296, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); *Player v. State of Alabama, Department of Pensions & Security,* 400 F.Supp. 249, 262 (M.D.Ala. 1975). The Court in *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 353, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974), said that state action requires that there be a sufficiently close nexus between the state and the challenged activity so that the activity could be attributed to the state itself, and it suggested that the power so exercised must have been associated "traditionally" with sovereignty or the exclusive prerogative of the state. It may be argued that defense of indigent defendants satisfies even the *Jackson* test because at least since *Gideon* and *Douglas,* this function has been an essential function of the state. In *Jackson,* 419 U.S. at 353, 95 S.Ct. 449, the Court noted that the provision of utility services was not a duty imposed upon the state by statute. In the case at bar, however, the provision of counsel for indigent criminal defendants has been imposed upon the state by both the United States Constitution, *Douglas,* and state law, e. g., Ill.Rev.Stat., ch. 34, § 5601 *et seq.,* and thus this case is readily distinguishable from *Jackson.* While the "tradition" of providing counsel on appeal does not extend far back into this country's common law, it has certainly been a function associated with sovereignty since the *Gideon* and *Douglas* decisions.

Although the function of the public defender is to oppose directly the efforts of another state officer, the prosecutor, the public defender nonetheless performs an essential governmental function. It would be anomalous to hold that the public defender and the prosecutor both enjoy absolute immunity by virtue of their close relation to the criminal justice system and simultaneously to hold that only the prosecutor acts under color of state law. The public defender is importantly affiliated with the

state, even though the benefit of the defender's services flows to the defendant rather than to the state directly. Accordingly, were the resolution of the instant motion to dismiss to turn on it, we would hold that, in the discharge of his official duties, defendant acted under color of state law.

The motion to dismiss plaintiff's claim made under 42 U.S.C. § 1983 is granted for the reason that defendant enjoys absolute immunity from that claim; the pendent state law claim is dismissed for want of jurisdiction. Judgment will enter dismissing plaintiff's action.