**Consuewella AFRICA and MOVE Organization**

v.

**Judge Levy ANDERSON and A. Benjamin Johnson.**

Civ. A. No. 80–3642.

United States District Court, E. D. Pennsylvania.

Dec. 31, 1980.

On Motions to Dismiss March 17, 1981.

Consuewella Africa, pro se.

Charles W. Johns and Howland W. Abramson, Legal Counsel to the Administrator of Pennsylvania Courts, Philadelphia, Pa., for Judge Levy Anderson.

## MEMORANDUM AND ORDER

LOUIS H. POLLAK, District Judge.

Consuewella Africa, a member of "MOVE," was a defendant in a lengthy criminal trial which took place last summer and fall in the Philadelphia Court of Common Pleas. The Judge who presided at the trial was Honorable Levy Anderson. Ms. Africa was charged with homicide and other offenses. The charges grew out of the extended and ominous confrontation resulting from MOVE's refusal to permit Philadelphia officials to inspect its Powelton Village headquarters—a confrontation which culminated calamitously in the death of a police officer and the razing of the MOVE building.

On September 18, 1980, while the trial before Judge Anderson was still in progress, Ms. Africa filed in this court an application for leave to file, *in forma pauperis*, a complaint alleging that Judge Anderson and A. Benjamin Johnson, Esquire—

an attorney appointed by Judge Anderson to conduct Ms. Africa's defense—were violating her federally guaranteed religious liberty in two respects. The first claim was that "Judge Levy Anderson, along with attorney A. Benjamin Johnson, forced a jury on me against my will, against my religion." The second claim challenged the role of Mr. Johnson as Ms. Africa's court-imposed counsel: "We [members of MOVE] are fixed in principle, steady in cohesion, strong as the foundation of a massive tree. I am a lawyer. I am a doctor. I am the governor of self. After stating this in court, in the presence of Judge Levy Anderson and attorney A. Benjamin Johnson, both arrogantly refused to adhere to my religion, denying me the right of self-representation."

Ms. Africa's complaint sought (1) a declaratory judgment that the challenged procedures "are acts of religious prosecution of plaintiff's [sic] religion, the teaching of *JOHN AFRICA*, and harassment," and (2) "compensatory damages" in the sum of $20,000,000 levied against Judge Anderson and $10,000,000 levied against Mr. Johnson.

Ms. Africa's application was referred to Magistrate Hall, who has filed a detailed and thoughtful *Report and Recommendation* which places Ms. Africa's submission in clear focus:

1. Magistrate Hall has determined that Ms. Africa is entitled to proceed *in forma pauperis*. Her application so to proceed will, therefore, be approved.

2. Assuming *arguendo* that there is substantive merit in Ms. Africa's assertion that her religious freedom has been infringed upon by what has transpired at her criminal trial, the question arises whether Ms. Africa is entitled to press her claims for damages and declaratory relief either against Judge Anderson or against Mr. Johnson.

*Judge Anderson*

■ A. On the authority of *Stump v. Sparkman*, 435 U.S. 349, 98 S.Ct. 1099, 55

L.Ed.2d 331 (1978), Magistrate Hall properly concluded that Ms. Africa's damage claim against Judge Anderson must be dismissed: ". . . judges defending against § 1983 actions enjoy absolute immunity from damages liability for acts performed in their judicial capacities." *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980).

B. Magistrate Hall is further of the view that Judge Anderson enjoys no immunity with respect to Ms. Africa's prayer for a declaratory judgment. I agree. *Slavin v. Curry*, 574 F.2d 1256, 1264 (5th Cir. 1978)[1]; *Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d 976, 980–81 (5th Cir. 1979), *affirmed sub nom. Dennis v. Sparks*, —— U.S. ——, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980).

*Mr. Johnson*

■ A. Magistrate Hall has concluded that Ms. Africa's complaint does not state a cause of action against Mr. Johnson under 42 U.S.C. § 1985(3). I concur in this conclusion. As Magistrate Hall properly holds, that statutory provision is addressed to conspiracies to deny the equal protection of the laws (see *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971)), not conspiracies to infringe upon First Amendment liberties.

■ B. Magistrate Hall has also concluded that Mr. Johnson cannot be sued by Ms. Africa under 42 U.S.C. § 1983: "By representing Ms. Africa in his capacity as a court-appointed attorney, Mr. Johnson is not acting 'under color of state law' . . . . the critical prerequisite to the prosecution of a suit under that section." This analysis is clearly right: While some ambiguity shrouds the status, for Section 1983 purposes, of a public defender (cf. *Brown v. Joseph*, 463 F.2d 1046, 1048 [3rd Cir. 1972], *cert. denied*, 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003), "[p]rivately retained and court-appointed private attorneys have

---

1. The record before this court is not at this stage sufficient to permit resolution of the question whether the jury's return of a verdict in Ms. Africa's criminal trial—an event reported on television and in the press subsequent to the filing of the Magistrate's *Report and Recommendation* in this civil suit—has mooted Ms. Africa's prayer for declaratory relief.

unanimously been held not to act under color of state law." *Caruth v. Geddes*, 443 F.Supp. 1295, 1299 n.1 (N.D.Ill.1978). See *Thomas v. Howard*, 455 F.2d 228 (3d Cir. 1972); *Steward v. Meeker*, 459 F.2d 669 (3rd Cir. 1972); *Votyko v. Ramada Inn of Atlantic City*, 445 F.Supp. 315, 329 (D.N.J. 1978); 36 A.L.R.Fed. 594 (1978). However, when a person not acting "under color of state law" is charged with collaborating with a state official to misapply state power to the detriment of a third person's federally protected rights, both the state official and his private collaborator are suable under section 1983. Chief Judge Lord made this very point in *Kovacs v. Goodman*, 383 F.Supp. 507, 509 (E.D.Pa.1974), explicating Judge Wood's opinion in *Johnson v. Crumlish*, 224 F.Supp. 22 (E.D.Pa.1963): "In *Johnson*, the [private] attorney was alleged to have conspired with state officers to violate the plaintiff's constitutional rights. Judge Wood properly concluded that 'individuals who allegedly joined or cooperated with state officials who acted under color of state law, are subject to liability under the Civil Rights Act.'" Since in this case Ms. Africa has charged, in effect, that Judge Anderson and Mr. Johnson have conspired to utilize the judicial machinery of the Commonwealth to her constitutional detriment, Ms. Africa may proceed under Section 1983 not only against Judge Anderson, but also against Mr. Johnson—unless Mr. Johnson as a court-appointed counsel, has some measure of immunity from suit.

■ C. Were Mr. Johnson a public defender, he would, like Judge Anderson, be wholly shielded from damage claims arising under Section 1983. *Brown v. Joseph, supra; Caruth v. Geddes, supra; Robinson v. Bergstrom*, 579 F.2d 401 (7th Cir. 1978).[2] "Arguably," as Judge Prentice Marshall observed in *Caruth v. Geddes, supra*, the principles conferring immunity on public defenders "could be applied equally to privately retained and court-appointed private attorneys engaged in criminal defense." 443 F.Supp. at 1299 n.1.[3] Judge Marshall found it unnecessary to resolve that question in *Caruth v. Geddes*, and added that in the generality of Section 1983 cases the question was not significant for the reason that private attorneys, even when court-appointed, were not acting "under color of state law" and hence were not suable under Section 1983. But, as I have held above, Ms. Africa's complaint, generously read, defines this case as one of the very few Section 1983 cases in which a private attorney is suable because he is alleged to have conspired with a person clothed with and exercising state authority. It would seem anomalous not merely to hold Mr. Johnson suable, but also to find him liable in damages where his co-defendant, Judge Anderson, is immune. Such an asymmetry could, nonetheless, be thought to be required by the Supreme Court's recent decision in *Dennis v. Sparks*, —— U.S. ——, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), unanimously sustaining the Fifth Circuit's determination that private conspirators sued under Section 1983 for their corrupt collaboration with an allegedly bribed judge do not share the judge-conspirator's immunity from damage claims. However, I conclude that *Dennis v. Sparks* is fundamentally distinguishable from the case brought by Ms. Africa. Ms. Africa's complaint challenges trial procedures allegedly ordained by Judge Anderson and merely facilitated by Mr. Johnson; the Judge, not defense counsel, is the prime malefactor in Ms. Africa's perception,—as evidenced, for example, by the comparative *ad damna* ($20,000,000 as against Judge Anderson; $10,000,000 as against Mr. Johnson). By contrast, the rule of *Dennis v. Sparks* is responsive to a situation in which, so it was alleged, "private persons . . . persuaded the immune judge to exercise his jurisdiction corruptly." —— U.S. at ——, 101 S.Ct. at 186; and see 604 F.2d at 980. Accordingly, I conclude that under the complaint as now drawn, Ms. Africa can press

---

2. Compare, as to the malpractice liability of a public defender under state law, *Reese v. Danforth*, 486 Pa. 479, 406 A.2d 735 (1979).

3. As to the malpractice liability of court-appointed private counsel, see *Ferri v. Ackerman*, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979).

her Section 1983 claims—assuming, *arguendo*, their substantive validity—both against Mr. Johnson and against Judge Anderson, but only for declaratory relief, not for damages. Wherefore, I now turn to the question whether either of Ms. Africa's claims poses, *prima facie*, a viable cause of action under Section 1983.

### The Substantive Viability of Ms. Africa's Claims

Fairly construed, Ms. Africa's complaint claims that her religious principles have been transgressed by (1) the requirement that she be tried by a jury, and (2) Judge Anderson's appointment of Mr. Johnson as her attorney, in lieu of permitting Ms. Africa to represent herself. In assessing the substantiality of Ms. Africa's claims pursuant to Section 1983, I will assume that the procedures complained of do in fact adversely impinge on tenets Ms. Africa sincerely subscribes to which are fairly describable as important elements of her religion.

### (1) Judge Anderson's Requirement that Ms. Africa be Tried by a Jury:

■ In considering the elements of the federal criminal trial process, the Supreme Court has recognized the substantiality of the Government's interest, *qua* prosecutor, in insisting on a jury trial notwithstanding a defendant's preference for a bench trial (*Singer v. United States*, 380 U.S. 24, 36, 85 S.Ct. 783, 790, 13 L.Ed.2d 630 [1965]):

.... [T]he Government, as a litigant, has a legitimate interest in seeing that cases in which it believes a conviction is warranted are tried before the tribunal which the Constitution regards as the most likely to produce a fair result.

The Commonwealth of Pennsylvania, in its discrete roles as prosecutor and adjudicator, has interests of comparable gravity in ensuring that one accused of crime is tried before the tribunal "most likely to produce a fair result." Moreover, given that, as her proposed complaint makes plain, Ms. Africa not only denies the authority of a jury to judge her but also denies the authority of a

judge to judge her, neither a court of the Commonwealth nor this court would have any way to accommodate Ms. Africa's religious objection to the jury trial process short of directing that she not be tried at all. The free exercise clause of the First Amendment does not entitle Ms. Africa to disable the Commonwealth from trying her.

### (2) The Insistence of Judge Anderson and Mr. Johnson, Ms. Africa's court-appointed Attorney, that Ms. Africa be Represented by Mr. Johnson, Notwithstanding her Expressed Desire to Represent Herself:

■ Although there is some authority for the proposition that the right to self-representation, like the right to counsel, has Sixth Amendment underpinnings, the Court of Appeals for this Circuit, unpersuaded by that syntactically anomalous reading of the Amendment, has "reject[ed] [the] contention that the Constitution guarantees a defendant the right to proceed pro se." *United States ex rel. Soto v. United States*, 504 F.2d 1339, 1342 (3 Cir. 1974).

However, while declining to endorse the view that one charged with crime has a blanket Sixth Amendment-based entitlement to dispense with counsel in favor of self-representation, the Court of Appeals has recognized that in particular instances values of constitutional dimension may call for subordination of a state's responsibility to insure legal representation. Citing a valuable law review Comment (*Self-Representation in Criminal Trials: The Dilemma of the Pro Se Defendant*, 59 *Calif.L.Rev.* 1479, 1481 [1971]), the Court of Appeals has observed (*United States ex rel. Soto v. United States, supra*, 504 F.2d at 1343):

Pro se representation may at times serve the ideal of a fair trial better than representation by an attorney. Also, the individual's freedom of choice and stake in the conduct of his own trial should, on occasion, prevail over society's generalized interest in the trial process.

Therefore, I conclude that Ms. Africa's complaint is not subject to dismissal insofar as it alleges that Judge Anderson's and Mr.

Johnson's combined efforts to require Ms. Africa to be heard only through Mr. Johnson deprived Ms. Africa of her religious freedom. Whether Ms. Africa's pleading can survive factual development, and further elaboration of the relevant substantive and remedial law, must abide the event.

### Conclusion

In an order filed with this Memorandum, Judge Anderson and Mr. Johnson are directed to file timely answers to those aspects of Ms. Africa's complaint found in this Memorandum not now to be subject to dismissal.

### MEMORANDUM

LOUIS H. POLLAK, District Judge.

On Motions To Dismiss

On December 31, 1980, I entered an Order directing Honorable Levy Anderson and A. Benjamin Johnson, Esq. "to file timely answers to those aspects of the complaint found in [an accompanying] Memorandum to be not now subject to dismissal." The accompanying Memorandum sustained part of a complaint, submitted *in forma pauperis*, in which Ms. Consuewella Africa challenged certain procedural arrangements which governed her recent state court trial before Judge Anderson. The aspect of the complaint which seemed to state a legally cognizable claim was Ms. Africa's allegation that, notwithstanding her announced desire to proceed *pro se*, she was compelled by Judge Anderson to be represented in court by Mr. Johnson as court-appointed counsel. Treating Ms. Africa's complaint as arising under 42 U.S.C. § 1983 and confined to a prayer for declaratory relief, I "conclude[d] that Ms. Africa's complaint is not subject to dismissal insofar as it alleges that Judge Anderson's and Mr. Johnson's combined efforts to require Ms. Africa to be heard only through Mr. Johnson deprived Ms. Africa of her religious freedom. Whether Ms. Africa's pleading can survive factual development, and further elaboration of the relevant substantive and remedial law, must abide the event."

I.

On February 17, 1981, Judge Anderson, by his counsel, Charles W. Johns, Esq., and Howland W. Abramson, Esq., filed a motion to dismiss:

1. The movant first argues that the complaint fails to allege, with adequate specificity, facts giving rise to a viable cause of action. The argument is without merit. See the complaint and my Memorandum of December 31, 1980.

2. The movant's second argument is captioned: "The judicial Defendant is immune from money damages under the doctrine of absolute judicial immunity." A reading of my Memorandum of December 31, 1980 would disclose that I there held that Judge Anderson and Mr. Johnson could be sued in this case only for a declaratory judgment, not for money damages. Nothing argued by counsel for the movant shakes that conclusion.

3. Movant's counsel further assert that principles of "abstention" and "comity" require dismissal of the complaint. The argument, fully elaborated, is that "Plaintiff's criminal prosecution is in the post verdict motion stage and argument thereon is imminent"—this constituting "the first stage of [state] appellate review" which is "Plaintiff's adequate remedy of law." This formulation suggests—albeit obliquely—that the abstention rationale relied on is that of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its *sequelae*, not that of *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Since there is not suggestion of ambiguity as to the relevant principles of Pennsylvania law, the inapplicability of *Pullman* is manifest. But, given that (1) Ms. Africa is not seeking to enjoin the further phases of the state criminal proceeding, and (2) movant has not shown how Ms. Africa will, whether before Judge Anderson and via Mr. Johnson or otherwise, have "an opportunity to fairly pursue [her] constitutional claims in the ongoing state proceedings ..." *Juidice v. Vail*, 430 U.S. 327, 337, 97 S.Ct. 1211, 1218, 51 L.Ed.2d 376

(1977), the *Younger* doctrine is also inapplicable. See *Garden State Bar Ass'n v. Middlesex County Ethics Committee*, 643 F.2d 119 (3d Cir. 1981).

 4. Finally, counsel for the movant argue that service on Judge Anderson was not of the form contemplated by the Federal Rules of Civil Procedure and hence was ineffective to confer *in personam* jurisdiction on this court. The motion papers put the argument as follows:

Rule 4(a), Rules of Civil Procedure, provides that

> Upon the filing of the complaint the clerk shall forthwith issue a summons and deliver it for service to the marshall [sic] or to a person specially appointed to serve it.

The Rule is explicit that service is to be made either by a marshall [sic] or a person specially appointed. Instantly, service was not made by a marshall [sic] but by an acquaintance of the Plaintiff. There was no indication that the individual serving the summons and complaint was specially appointed.

Rule 4(a) as set forth in the motion papers does not correspond with Rule 4(a) as I know it. The opening sentence of the version of Rule 4(a) current in this courthouse reads as follows:

> Upon the filing of the complaint the clerk shall forthwith issue a summons and deliver it for service to the marshal or to any other person authorized by Rule 4(c) to serve it.

Since it is acknowledged that service was effectuated "by an acquaintance of the Plaintiff" and there is no indication that s/he was not a "person authorized by Rule 4(c)" to effectuate service, movant's claim that service was defective is unsubstantiated.

## II.

The records in the Clerk's office do not disclose that any answer, or other responsive pleading, has thus far been filed by Mr. Johnson.

*Conclusion*

In an Order dated and filed today, (1) Judge Anderson's motion to dismiss is denied; (2) Mr. Johnson is directed to file an answer, or other pleading responsive to the complaint, within ten days of the filing of the Order.