Joseph Carl **BROWN**, Jr., Appellant,

v.

**Richard P. JOSEPH**, Esquire.

No. 71–1869.

United States Court of Appeals,
Third Circuit.

Argued May 26, 1972.

Decided June 22, 1972.

Lane Taylor, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for appellant.

Anthony V. DeCello, Asst. County Sol., and John J. Dean, Chief, Appellate Div., Pittsburgh, Pa., for appellee.

Before STALEY, ALDISERT and HUNTER, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

The question presented is whether a court-appointed trial attorney employed by the Public Defender's Office of Allegheny County, Pennsylvania, may be held liable to respond in damages in an action alleging constitutional deprivation under 42 U.S.C. § 1983 [1] brought by a former client in a state criminal proceeding. The district court held that the complaint failed to state a claim upon which relief could be granted, reasoning that the defendant was not acting under color of state law.

Arrested in Cleveland, Ohio, Brown waived extradition to Pennsylvania where he was charged with multiple counts of armed robbery, receiving stolen goods, larceny, assault and battery, and operation of a motor vehicle without the owner's consent. At arraignment he refused the services of the Public Defender. He subsequently repeated this refusal on at least two other occasions. When his case was finally called for trial, Brown, represented by the Public Defender, entered a guilty plea and was sentenced. There was no appeal. State post conviction proceedings were commenced, and relief was denied; the denial was affirmed by the state appellate court. This action under the Civil Rights Act followed.

The Pennsylvania Public Defender Act, 16 Pa.Stat.Anno. § 9960.1 et seq.,

[1] § 1983. Civil action for deprivation of rights

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

provides for the creation of this office in each of the state's counties, except Philadelphia. § 9960.3. The Public Defender is appointed by the County Commissioners, § 9960.4; his salary and that of his assistants are established by the county salary board, § 9960.5; office space, furniture, equipment and supplies are furnished by the county, § 9960.9. His duties are set forth in § 9960.6:

> a. The Public Defender shall be responsible for furnishing legal counsel, [for appropriate cases including criminal matters] to any person who, for lack of sufficient funds, is unable to obtain legal counsel.

The office is funded from county public tax revenues.[2] In this respect, the public nature of the office does not differ substantially from the office of the Allegheny County District Attorney. Moreover, there appears to be no substantial difference in the statutory authority for the creation and powers of a public prosecutor and a public defender in Pennsylvania.[3]

Thus, it is argued that, aside from concepts of immunity, if the prosecutor acts "under color of any statute . . . of any State," and therefore comes within the jurisdictional purview of § 1983, so should the public defender. Both are engaged in the same basic function in a state criminal proceeding: one represents the prosecution; the other, the defendant. Both offices are mandated by statute. Their functions are the same; only their respective clients are different.

But it is precisely the difference in the clients, argues the appellee, which marks the major and fundamental difference in the attorney-client relationship, and the legal consequences flowing therefrom. Because the prosecutor represents the state, the collective citizenry of the Commonwealth constitutes his sole client. His relationship to this cli-

ent from the beginning to the end is a public one, representing the state and its interests at all times. Every professional decision made by him is performed not only "under color of . . . statute," but also under "the regulation, custom, or usage" of that state for one purpose—to advance and protect the interest of the state. Thus, the district attorney must be compared to other public officers associated with state criminal processes whose functions are generally, if not universally, construed to be within the color of Pennsylvania state law, such as law enforcement officers, correctional supervisors, and administrative officers.

The Public Defender argues that once his appointment in a given case is made, his public, or state, function ceases, and that thereafter he functions purely as a private attorney, concerned with and absorbed by one interest—that of serving a private client. His professional relationship with his client takes on all the incidents and considerations attendant upon a private attorney-client relationship, except one: the public pays his fee. His standard of competency within Sixth Amendment standards must comport with that reflecting normal competence of all defense counsel whether privately retained, volunteered, or publicly paid. United States v. Moore, 432 F.2d 730 (3d Cir.1970). He has but one loyalty—and that is to his client, and not to the state, or to the collective citizenry thereof.

■ Therefore, he argues, with considerable persuasion, that every aspect of his professional relationship to his client, within the framework of ethical representation thereof, which conceivably could form the subject matter of a claim under § 1983, is performed by him not as a representative of the state, under color of state law, but in the context of a private practitioner. The attorney-client confidential relationship is preserved. His client is not the Com-

2. At oral argument, John J. Dean, Chief, Appellate Division, Offices of Allegheny County Public Defender, indicated that

his office is the recipient of certain federal funds as well.

3. Compare 16 Pa.Stat.Anno. § 4401 et seq.

monwealth of Pennsylvania, whose legislative processes created his office; nor the people of Allegheny County, who appoint him to office and pay his salary. His client is a private individual, who, by reason of indigency, is unable to retain and compensate other counsel. Essentially he is state-paid private counsel, assigned the responsibility of protecting the interests and defending the rights of a client. It is settled in this circuit that a private attorney is not a state officer so as to bring his actions within the purview of § 1983. Steward v. Meeker, 459 F.2d 669 (3d Cir.1972); Habda v. Wysocker, 458 F.2d 537 (3d Cir.1972); United States ex rel. Wilkins v. Banmiller, 325 F.2d 514, 516 (3d Cir.1953).

Moreover, we have recently held that a New Jersey lawyer "acting voluntarily by assignment from a pool of attorneys of the Essex County Legal Aid-Criminal Division, was performing his duties solely for [the client] to whom he owed the absolute duty of loyalty, as if he were a privately retained attorney. N.J.S.A. 2A:158A–11. Therefore, the affidavits demonstrate that defendant was not acting 'under color of state law, custom or usage' within the meaning of the Civil Rights Act, see, Pugliano v. Staziak, 231 F.Supp. 347 (W.D.Pa.1964), aff'd per curiam, 345 F.2d 797 (3d Cir.1965), and no triable issue of fact upon which relief may be granted remained in the case." Thomas v. Howard, 455 F.2d 228 (3d Cir.1972). Peake v. County of Philadelphia, 280 F.Supp. 853, 856 (E.D.Pa. 1968), held that a member of the Philadelphia Voluntary Defender Association, in part subsidized by the state and local government "is a private individual acting in a professional capacity" and therefore not amenable to a § 1983 action.

Concededly, there are differences between a court-appointed lawyer from a pool of volunteers, *Thomas,* or from an agency funded by private contributions, *Peake,* and one serving full time in a public office paid by public revenues authorized and mandated by statute.

But the fact that one comes to his court-appointed role as a result of a state-mandated and county-financed system does not, in any respect whatsoever, distinguish his professional responsibility to his client from that of any attorney appointed to serve without pay, or paid by a legal aid society financed largely by private contributions. We find it difficult to perceive "color of law" in the activities in the first category, and deny its existence in the latter. In any event, we do not deem it necessary to decide the question, see Wardrop v. Dean, 459 F.2d 1030 (3d Cir.1972), because in the view we take, even assuming the color of law requirement to have been met, we hold that a County Public Defender, created under the Pennsylvania statute, enjoys immunity from liability.

The Supreme Court has held that a state judge enjoys immunity for acts done in the performance of his judicial function, Pierson v. Ray, 386 U.S. 547 (1967). In Bauers v. Heisel, 361 F.2d 581 (3d Cir.1966), and in Kauffman v. Moss, 420 F.2d 1270 (3d Cir.1970), we extended that immunity to state prosecutors; and in Bethea v. Reid, 445 F.2d 1163 (3d Cir.1971), to an Assistant United States Attorney in an action brought for an alleged Fourth Amendment deprivation. Our decisions therefore reflect the current state of the law throughout the circuits. "Prosecutors, state and city attorneys are generally immune under the Civil Rights Act, unless their acts are clearly outside the scope of their jurisdiction." Antineau, Federal Civil Rights Acts, § 40, and cases cited therein.

We perceive no valid reason to extend this immunity to state and federal prosecutors and judges and to withhold it from state-appointed and state-subsidized defenders. Implicit in the extension of judicial immunity to prosecutors was the recognition of a public policy encouraging free exercise of professional discretion in the discharge of pre-trial, trial, and post-trial obligations.

Indeed, the very reasons advanced to assert that the Public Defender acts under color of state law because of the favorable comparision of his activities with those of public prosecutors, would, *a fortiori*, support an argument in favor of the public defender on the immunity issue.

There are other considerations of public policy. First, there is the desirability of encouraging able men and women to assume Public Defender roles. To subject this defense counsel to liability, while cloaking with immunity his counterpart across the counsel table, the clerk of the court recording the minutes, the presiding judge, and counsel of a co-defendant, privately retained or court-appointed, would be to discourage recruitment of sensitive and thoughtful members of the bar. Complaints under the Civil Rights Act, like the one at bar, are usually *pro se*. These receive special treatment, favorable to plaintiff. Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). Except where patently frivolous, they may be filed without the payment of a filing fee by indigents. Unlike complaints sounding in common law or statutory tort, public policy dictates that they be broadly interpreted in favor of inclusion, rather than exclusion. Valle v. Stengel, 176 F.2d 697, 702 (3d Cir.1949). To deny immunity to the Public Defender and expose him to this potential liability would not only discourage recruitment, but could conceivably encourage many experienced public defenders to reconsider present positions.

Moreover, as stated in the Public Defender's brief, "the most probable result of such a decision would be the exact opposite of what the courts want. Both the Court and the Public Defender's Office [seek] adequate representation of defendants in criminal proceedings, as well as the [expeditious] handling of cases. However, if a civil rights suit from unsatisfied clients is a constant threat to the Attorney involved, then there would be a chilling effect upon Defense Counsel's tactics. Defense Counsel would be caught in an intrinsic conflict of protecting himself and representing his client."

We hold, therefore, that a county Public Defender, whose office is created under the Pennsylvania statute, enjoys immunity from liability under the Civil Rights Act.

The vesting of immunity on the Public Defender does not leave a state criminal defendant without an adequate remedy at law. Vindication of allegedly invaded federal rights may be asserted by direct appeal, by state post conviction remedies, and by federal habeas corpus petitions. Indeed, the conceptual basis of Sixth Amendment competency of counsel previously narrowly constricted in United States ex rel. Darcy v. Handy, 203 F.2d 407, 427 (3d Cir.1953), has been generously expanded. United States v. Moore, *supra*.

The judgment of the district court will be affirmed.