542 F.2d 899
 36 A.L.R.Fed. 588
 E. George MINNS, Jr., Individually and on behalf of others
similarly situated, Appellant,
v.
John Gray PAUL, Jr., Individually and in his official
capacity as court-appointed attorney to
Harrisonburg Correctional Field Unit No.
8, Appellee.
 No. 75-1427.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 6, 1976.
Decided Aug. 9, 1976.
 
 D. Edward Wilson, Jr., Third Year Law Student (Michael E. Geltner, Washington, D. C. (court-appointed counsel), on brief), for appellant.
 John Gray Paul, Jr., pro se.
 Before HAYNSWORTH, Chief Judge, and WINTER and WIDENER, Circuit judges.
 WINTER, Circuit Judge:
 
 
 1
 E. George Minns, Jr., a Virginia state prisoner, brought this action under 42 U.S.C. § 1983 (1970), alleging that John Gray Paul, Jr., his court-appointed attorney, while acting under color of state law, deprived Minns of constitutional rights secured by the fourteenth amendment, in that Paul failed to respond to Minns' requests for legal help in preparing a petition for a writ of habeas corpus. The district court sustained a motion to dismiss the complaint, holding that the requisite state action was not present. We affirm, although we do so for reasons different from those assigned by the district court.
 
 I.
 
 2
 Because the district court made a final disposition on a motion to dismiss the complaint, we accept all of the allegations of the complaint as true for purposes of this appeal.
 
 
 3
 Plaintiff Minns was confined to Harrisonburg Correctional Field Unit No. 8, a Virginia prison. Pursuant to the Code of Virginia § 53-21.2 (1974),[1] defendant Paul, an attorney, had been appointed "to counsel and assist indigent inmates therein confined regarding any legal matter relating to their incarceration," other than those matters pending in court for which an attorney had already been appointed.
 
 
 4
 Between the 8th and 14th of January, 1975, Minns telephoned Paul to request legal assistance in preparing a petition for habeas corpus; during that conversation, Minns was assured that Paul would be back in contact with him within a week. On January 18, 1975, the plaintiff sent a formal written request for legal assistance to the defendant. At Minns' instance, on February 5, 1975, the Assistant Superintendent of the Correctional Unit telephoned Paul to discover the reasons why the defendant had not acted upon the plaintiff's requests for legal assistance. On February 6, 1975, Minns sent a second letter to the defendant, once again requesting legal assistance. Paul has never responded in any way to these requests.
 
 
 5
 Minns filed suit on February 24, 1975, alleging the facts set forth above, and alleging further that Paul's failure to act on the requests deprived the plaintiff of rights secured by the fourteenth amendment, that suit is authorized by 42 U.S.C. § 1983, and that Minns is entitled to a declaratory judgment, $200 compensatory damages and $50 punitive damages.
 
 II.
 
 6
 In addition to contending that he did not act under color of state law so as to give the district court jurisdiction under § 1983, Paul argues that by virtue of his position as a court-appointed attorney, he should enjoy absolute immunity from suits alleging that he violated § 1983. Because we agree with the latter contention, we do not reach the question of whether Minns acted under color of state law.
 
 
 7
 The Supreme Court has recognized the existence of such immunity for other state officials involved in the judicial process. In Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), it was held that state court judges were not liable for damages under § 1983. This immunity was extended to public prosecutors in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Similarly, the Third Circuit has held that public defenders acting within the scope of their duties enjoy the same absolute protection, Brown v. Joseph, 463 F.2d 1046 (3 Cir. 1972), cert. denied, 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973). The Seventh Circuit, in John v. Hurt, 489 F.2d 786 (7 Cir. 1973), has recognized qualified immunity.[2]
 
 
 8
 We recognize that Pierson v. Ray, supra, and Imbler v. Pachtman, supra, rest in large part on the extension of common law principles in granting complete immunity to judges and prosecutors. Cf. Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), and Scheuer v. Rhodes, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (qualified immunity for other government officials). Not surprisingly, there is virtually no common law with respect to the personal liability of court-appointed counsel and public defenders. The obligation of the federal government and the state to provide counsel to indigent defendants has only arisen since Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). Both through subsequent court decisions and statutes, such as that which is involved in the instant case, the government's role as a provider of counsel to indigents has been expanded so that now it is more true than not that for indigents the government's role in litigation is to provide counsel for both sides of a controversy as well as a judicial officer to decide it. The government-provided attorneys for indigents face many problems identical to those which confront their more traditional counterparts who represent the government.
 
 
 9
 We are therefore persuaded that the Third Circuit, in Brown, correctly concluded:
 
 
 10
 We perceive no valid reason to extend this immunity to state and federal prosecutors and judges and to withhold it from state-appointed and state-subsidized defenders. Implicit in the extension of judicial immunity to prosecutors was the recognition of a public policy encouraging free exercise of professional discretion in the discharge of pre-trial, trial, and post-trial obligations. Indeed, the very reasons advanced to assert that the Public Defender acts under state law because of the favorable comparison of his activities with those of public prosecutor, would, a fortiori, support an argument in favor of the public defender on the immunity issue. Brown v. Joseph, 463 F.2d at 1048-49.
 
 
 11
 The decisions of the Third Circuit in Brown and that of the Seventh Circuit in John correctly identify the policy reasons which support a rule of absolute immunity. Basically there are two: (a) the need to recruit and hold able lawyers to represent indigents both full and part-time public defenders, as well as private practitioners appointed by courts to represent individual defendants or litigants, and (b) the need to encourage counsel in the full exercise of professionalism, i. e., the unfettered discretion, in the light of their training and experience, to decline to press the frivolous, to assign priorities between indigent litigants, and to make strategic decisions with regard to a single litigant as to how best his interests may be advanced.
 
 
 12
 The latter consideration is particularly important because of the special nature of the relationship between the state-supplied attorney and his indigent client. In a typical attorney-client relationship, the potential costs to the client operate as an economic brake on him to urge his attorney to pursue frivolous grievances. Moreover, the private attorney can simply turn away those potential clients who persist in urging claims which are patently unsound.
 
 
 13
 The situation is entirely different in the instant case. Typically, under a statute such as Virginia's, the court-appointed attorney has virtually no control over which clients he will accept or reject. Moreover, since the state rather than the indigent himself is paying the attorney, the client has no economic incentive for eschewing frivolous claims. The experience of the federal courts in federal habeas corpus and § 1983 litigation demonstrates that indigents more frequently attempt to litigate claims which are patently without merit than do non-indigent parties.
 
 
 14
 Imbler points out the reasons why a rule of only qualified immunity would not reach the goals sought to be achieved by immunity. Unless immunity is absolute, an attorney in Paul's position would not be totally free to exercise his best judgment in representing his client because he would be constrained to weigh every decision in terms of potential liability. The resentment of unsuccessful litigants may easily blossom into § 1983 litigation, and defense of even frivolous § 1983 suits would consume the energy of state-subsidized attorneys which should be devoted to representing the interests of other indigent clients.
 
 
 15
 The instant case is a classic example. No facts are alleged that indicate that Paul exceeded the scope of his function or that he was intentionally disregarding Minns' rights; at most Minns' complaint is that the legal services which he sought were not forthcoming within the thirty-seven days which elapsed between the request of January 18, 1975 and the filing of the complaint on February 24, 1975. This not untoward delay is almost certainly explainable by any number of benign reasons; yet absent absolute immunity, Paul will be called upon to expend considerable time and energy in defending the suit beyond the pleading stage.
 
 
 16
 Moreover, the nature of an attorney's role leaves him peculiarly vulnerable to more substantial claims. The nature of the strategic decisions, including the use of witnesses, which must be made by an indigent's attorney makes him more likely than other non-judicial officials to be subject to colorable claims of violation of § 1983. The possibility that adverse ruling might result in a frivolous or colorable claim under § 1983 may have an adverse subconscious effect on the judgment of a judicial officer whose primary duty is to find the truth and apply the law. Imbler, supra, 424 U.S. at 409, 96 S.Ct. 984.
 
 III.
 
 17
 Finally, we note that the rule of absolute immunity which we adopt does not leave the typical indigent entirely remediless. If the misconduct of assigned counsel results in a deprivation of a federal right in the defense of a prosecution, redress of the deprivation may be achieved in a direct appeal, a state post-conviction remedy, or by federal habeas corpus. Brown, 463 F.2d at 1049. If the misconduct of the state-appointed attorney causes the inmate to be unsuccessful in a state habeas corpus proceeding, then federal rights may still be vindicated through federal habeas corpus. Further, if the inmate fears that the state-appointed attorney is incompetent or bears malice, then the inmate may proceed pro se. Cf. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
 
 
 18
 Perhaps more important, as Imbler pointed out with respect to prosecutors, immunity from suit for damages under § 1983 "does not leave the public powerless to deter misconduct or to punish that which occurs." 424 U.S. at 429, 96 S.Ct. at 994. A federal statute, 18 U.S.C. § 242, provides a remedy against any state-employed attorney who abuses his office and willfully deprives a client of his constitutional rights. See United States v. Senak, 477 F.2d 304 (7 Cir.), cert. denied, 414 U.S. 856, 94 S.Ct. 157, 38 L.Ed.2d 105 (1973). Further, a state-appointed attorney, as a member of the bar, is amenable to discipline, even disbarment, if he abuses his office. These sanctions give assurance that attorneys in Paul's position will ordinarily faithfully carry out their responsibilities.
 
 
 19
 AFFIRMED.
 
 
 20
 WIDENER, Circuit Judge, concurs in the result.
 
 
 
 [1]
 § 53-21.2. Appointment of counsel for indigent convicts. The judge of a court of record having jurisdiction in the trial of criminal offenses, in whose county or city the State Penitentiary, a prison farm or a unit of the Bureau of Correctional Field Units, is located, shall on motion of the Commonwealth's Attorney for such county or city, when he is requested so to do by the Superintendent of the State Penitentiary, of a prison farm or of a unit of the Bureau of Correctional Field Units, appoint one or more discreet and competent attorneys-at-law to counsel and assist indigent inmates therein confined regarding any legal matter relating to their incarceration, other than that pending in any court and for which an attorney-at-law has been appointed by the court or otherwise obtained by an inmate
 An attorney so appointed shall be paid as directed by the court from the criminal fund, reasonable compensation on an hourly basis and necessary expenses, based upon monthly reports to be furnished the court by him.
 
 
 [2]
 It should be noted that John was decided prior to Imbler and equated the immunity of public defenders with that of state prosecutors