Charles Thomas MILLER,
Plaintiff-Appellant,

v.

Joseph BARILLA, Ass't District Attorney,
et al., Defendants-Appellees.

No. 75–2859.

United States Court of Appeals,
Ninth Circuit.

Jan. 31, 1977.

Charles Thomas Miller in pro. per.

John P. Farrell, Deputy County Counsel (argued), Los Angeles, Cal., for defendants-appellees.

Before CHAMBERS, CARTER and ANDERSON, Circuit Judges.

J. BLAINE ANDERSON, Circuit Judge:

Appellant, representing himself, having obtained his law degree while in prison, challenges the dismissal of his Civil Rights complaint. 42 U.S.C. § 1983. Appellant sought damages alleged to have been suffered by reason of the actions of the appellees, a trial judge, an assistant district attorney, and a deputy public defender, in entering into and breaching a plea bargain with appellant. On this appeal we accept appellant's version of the "contract" and his allegations of breach. Under the plea-bargaining arrangement, appellant was to receive a one-year to life sentence, to run concurrently with a previously-imposed federal sentence, in exchange for appellant's guilty plea to a charge of second-degree robbery. Appellant alleged that the representations of the appellees in regard to his sentence were false, thereby inducing him to waive his right to a trial and to accept the plea bargain which was not respected.

The district court, on its own motion and pursuant to the report and recommendation of a magistrate, dismissed the complaint and the action for lack of jurisdiction, finding that the district attorney and the trial judge were immune from suit under the Civil Rights Act and that the deputy public defender did not act under color of state

law. We affirm, but for different reasons, in regard to the public defender.[1]

■ The dismissal of the action as to the trial judge and the district attorney was clearly proper. The Supreme Court has found both to be absolutely immune from § 1983 damage liability for acts committed within their jurisdiction. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), and *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

■ The immunity of a public defender is an issue of first impression in the Ninth Circuit. Three other circuits have dealt with the issue. The Third Circuit, in *Brown v. Joseph,* 463 F.2d 1046 (3rd Cir. 1972), *cert. denied,* 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973), and the Fourth Circuit, in *Minns v. Paul,* 542 F.2d 899 (4th Cir. 1976), have extended immunity from § 1983 damage liability to the public defender for acts done in the performance of his judicial function. The Seventh Circuit, in *John v. Hurt,* 489 F.2d 786 (7th Cir. 1973), announced a rule of qualified immunity.[2] We believe, like the Third Circuit and Fourth Circuit, that a public defender should be accorded absolute immunity from § 1983 damage claims for acts done in the performance of his judicial function as a public defender.

■ In the instant case, the alleged Sixth Amendment violation, a broken plea bargain, is integrally related to the judicial process.[3] In *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court stated:

> "The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice."

404 U.S. at 260, 92 S.Ct. at 498.

In this regard the public defender acts in the same manner representing his client as does the prosecutor in representing the state and should be accorded similar immunity from acts arising out of that function. As the court in *Brown v. Joseph, supra,* stated:

> "We perceive no valid reason to extend this immunity to state and federal prosecutors and judges and to withhold it from state-appointed and state-subsidized defenders."

463 F.2d at 1048.

The analysis and reasoning undertaken in *Minns v. Paul, supra,* is persuasive. The *Minns* court identified two important policy reasons supporting absolute immunity:

> "(a) the need to recruit and hold able lawyers to represent indigents . . . , and (b) the need to encourage counsel in the full exercise of professionalism, i. e., the unfettered discretion, in the light of their training and experience, to decline to press the frivolous, to assign priorities between indigent litigants, and to make strategic decisions with regard to a single litigant as to how best his interests may be advanced."

542 F.2d at 901.

Only absolute immunity will achieve the desired result, as is pointed out in *Imbler v. Pachtman, supra,* 424 U.S. p. 426, 96 S.Ct. p. 993:

> "The affording of only a qualified immunity to the prosecutor also could have an adverse effect upon the functioning of the criminal justice system. Attaining the system's goal of accurately determining guilt or innocence requires that *both*

---

1. This court may affirm on any ground squarely presented on the record, even though the trial court may have based its decision on a different ground. *M.O.S. Corporation v. John I. Haas Co.,* 375 F.2d 614 (9th Cir. 1967).

2. The continued vitality of a qualified immunity is questionable since this case was decided before *Imbler v. Pachtman, supra,* and the court here equated the immunity principles of the public defender to the then existing qualified immunity of a prosecutor.

3. It is unwise, and unnecessary to a decision in this case, to attempt to categorize and list public defender conduct as being either within or without the parameters of the criminal judicial process. It is sufficient to hold, as we do, that "plea bargaining" is an integral part of the judicial process as to which the public defender enjoys absolute immunity under § 1983 and the facts assumed here.

the prosecution and the defense have wide discretion in the conduct of the trial and the presentation of evidence." (emphasis supplied)

Any qualified immunity doctrine would force defense of suits well through the pleading stages, and place a substantial drain on an already burdened legal services resource. Additionally, each public defender "would be constrained to weigh every decision in terms of potential liability." *Minns v. Paul, supra,* at 902.

In light of the foregoing, we need not decide the color of state law issue, but such state action would appear to be too tenuous.[4] Under California statutes, once a public defender is appointed, the state does not interfere with the attorney-client relationship and the attorney acts on behalf of his client in the historical and traditional manner and not on behalf of or controlled by the state.[5]

AFFIRMED.

---

**4.** Cf. *Brown v. Joseph, supra,* pp. 1046–48, and the comments of Judge Aldisert on the "color of state law" claim.

**5.** The California and Los Angeles County public defender plan would appear to conform to the recommendations of the American Bar Association, Standards Relating to Providing Defense Services, Approved Draft, 1968, Sec. 1.4, requiring professional independence. See also *Ex parte Hough,* 144 P.2d 585 (Cal.1944), 24 Cal.2d 522, 150 P.2d 448 (*on rehearing,* 1944).