628 F.2d 1104
 Russell Richard DODSON, Appellant,
v.
POLK COUNTY; Polk County Board of Supervisors; Polk County
Offender Advocate; and Martha Shepard,
Individually and through her official
capacity as an Agent or
Assistant for Polk
County, Appellees.
 No. 79-1996.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 9, 1980.
Decided Aug. 26, 1980.
 
 John D. Hudson, Des Moines, Iowa, for appellant.
 Thomas M. Werner, argued, John H. King, Asst. Polk County Attys., Des Moines, Iowa, on brief, for appellees.
 Before HEANEY and ARNOLD, Circuit Judges, and OVERTON,* District Judge.
 ARNOLD, Circuit Judge.
 
 
 1
 This appeal presents two related questions concerning the liability under 42 U.S.C. § 1983 of a county-employed public defender: First, whether a public defender, in representing an indigent defendant, acts under color of state law; and second, whether the defender enjoys immunity, either qualified or absolute, for conduct during that representation. The complaint alleged that Martha Shepard, an attorney in the Polk County, Iowa, Offender Advocate's office, failed to represent appellant adequately in his appeal of a robbery conviction to the Supreme Court of Iowa. Finding no state action, the United States District Court for the Southern District of Iowa dismissed the complaint as frivolous. We hold that a county-employed public defender does act under color of state law in representing indigent defendants and enjoys a qualified immunity from liability.
 
 I.
 
 2
 We take the allegations of the complaint as true on this appeal. It alleged that Dodson had been convicted of robbery in an Iowa state court, and that Ms. Shepard was appointed to represent him on appeal. Subsequently, she moved for permission to withdraw as counsel and to have the appeal dismissed as frivolous. Iowa R.App.P. 104 provides for dismissal of appeals found by the Supreme Court of Iowa to be "wholly frivolous." The motion was ultimately granted, and the appeal was dismissed. Dodson alleged in this case that Ms. Shepard's actions deprived him of his right to counsel, inflicted on him cruel and unusual punishment, and arbitrarily denied him his state-created right to appeal in violation of the Due Process Clause of the Fourteenth Amendment. The complaint set out pendent claims for malpractice and breach of an oral contract to prosecute the appeal.
 
 
 3
 The Polk County Offender Advocate and the Polk County Board of Supervisors, also named as defendants, were alleged to be responsible for Ms. Shepard's actions because they established rules and procedures for her to follow in handling criminal appeals. The District Court dismissed the claims against Ms. Shepard and the Offender Advocate, a county public official who supervises public defenders, for lack of state action. The claims against Polk County and its Board of Supervisors were dismissed because, in the opinion of the District Court, the complaint failed to allege the requisite personal involvement with unconstitutional conduct. Having disposed of all the constitutional claims, the District Court dismissed the pendent state claims as well.
 
 
 4
 The District Court, in a thoughtful opinion canvassing the existing authorities on the point, relied principally on the fact that a public defender, like private counsel, owes a duty of undivided loyalty to her client, and makes, or should make, decisions solely in the interest of the client. It may be true, and we assume for present purposes, that Polk County has no authority to direct or influence particular decisions that its public defenders make in the course of their representation of indigent defendants. It is also true, we assume, that the responsibility of a public defender, in terms of rules of ethics and standards of professional conduct, is the same in all respects as that of any other Iowa attorney, whether privately employed or court-appointed. In our view, however, the dispositive point is that the Offender Advocate and all his subordinates are employees of the County, which in turn, of course, is merely a creature of the State of Iowa. All these lawyers are selected, paid, hired, and fired by the County. Whether individual decisions made by attorneys in the office of the Offender Advocate are governed or influenced by the County or its officials is therefore beside the point. Public defenders receive their power not because they are selected by their clients, but because they are employed by the County to represent a certain class of clients, who likely have little or no choice in selecting the lawyer who will defend them. In short, we are persuaded by the analysis, on this point, of Robinson v. Bergstrom, 579 F.2d 401, 404-08 (7th Cir. 1978) (per curiam). See also the useful discussion in Note, Liability of Public Defenders Under Section 1983, 92 Harv.L.Rev. 943 (1979). We hold that an attorney in a county or state funded public defender's office acts under color of state law in representing indigent defendants. We are mindful that other courts have reached the opposite conclusion,[1] but for the reasons we have stated we simply disagree.[2]
 
 II.
 
 5
 We next consider whether a public defender enjoys a degree of immunity from § 1983 liability for actions taken while representing clients.[3] At the outset, we note that § 1983 itself specifies no immunities; it imposes liability by its terms upon "every person," and reflects a determination by Congress that a "damages remedy against the offending party is a vital component of any scheme for vindicating cherished constitutional guarantees." Owen v. City of Independence, 445 U.S. 622, 651, 100 S.Ct. 1398, 1415, 63 L.Ed.2d 673 (1980). It should be "construed generously to further its primary purpose." Gomez v. Toledo, --- U.S. ----, ----, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980).
 
 
 6
 On the other hand, the Supreme Court has on occasion found that immunity was so deeply rooted in both the common law and public policy that it was not abrogated by § 1983's silence on the question. Thus, Pierson v. Ray, 386 U.S. 547, 553-54, 87 S.Ct. 1213, 1217, 18 L.Ed.2d 288 (1967), held that the absolute immunity afforded judges at common law was preserved under § 1983, and absolute immunity was extended to prosecutors for the same reasons in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Relying upon cases such as Miller v. Barilla, 549 F.2d 648 (9th Cir. 1977), and Robinson v. Bergstrom, 579 F.2d 401, 408-11 (7th Cir. 1978) (per curiam), appellees argue that we should extend absolute immunity to public defenders.
 
 
 7
 To do so, however, we would have to ignore Ferri v. Ackerman, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), which held in the context of a malpractice action arising under state law, that an attorney appointed by a federal court to represent an indigent defendant is not entitled to absolute immunity as a matter of federal law. In the course of its unanimous opinion, the Court distinguished the function of a prosecutor or judge from that of appointed counsel. A judge or prosecutor, the Court noted, represents the interest of society as a whole, and absolute immunity gives them "the maximum ability to deal fearlessly and impartially with the public at large." Id. at 203, 100 S.Ct. at 408. On the other hand, the duty of appointed counsel is not to the public at large except in a very general way, but is to serve the undivided interest of his client, just as privately retained counsel do. Thus, the Court concluded "that the essential office of appointed defense counsel is akin to that of private counsel and unlike that of a prosecutor . . . or judge . . . ," ibid., and this was the Court's primary rationale.
 
 
 8
 Although Ferri was not a civil rights action, its rationale is controlling here by analogy.[4] We perceive no distinction of substance, for immunity purposes, between appointed counsel and a public defender. Both owe primary allegiance to the client and represent the public interest only in a general way. If federal law does not immunize counsel appointed by a federal court from a state-law tort action, neither does it immunize a public defender from liability under 42 U.S.C. § 1983 for a constitutional tort. The fear that a disgruntled client will file suit under 42 U.S.C. § 1983 does not conflict with the performance of a lawyer's duty, and may in fact provide incentive to perform competently. Counsel is presumably subject to a malpractice action under state law, anyway. For these reasons, we are compelled to deny the invitation to extend absolute immunity to public defenders.
 
 
 9
 On the other hand, we do not read Ferri to prohibit the implication of some degree of immunity in § 1983 cases. In limited instances, the Supreme Court has held that public officials are entitled to a qualified immunity from damages under § 1983. E. g., Procunier v. Navarette, 434 U.S. 555, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978) (prison officials); O'Connor v. Donaldson, 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975) (state hospital superintendent); Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975) (school board member). A finding of qualified immunity is usually preceded by an inquiry into whether the public official in question enjoyed immunity at common law. There is, of course, no pre-s 1983 common law with regard to the liability of public defenders. The dispositive question, then, is whether some degree of immunity is justified as a matter of public policy.
 
 
 10
 We believe that it is. Public defenders need the assurance that "action taken in the good-faith fulfillment of their responsibilities and within the bounds of reason under all the circumstances will not be punished and that they need not exercise their discretion with undue timidity." Wood v. Strickland, 420 U.S. 308, 321, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975). The defender oversteps the immunity boundary, however, if he acts in a manner which he knows or reasonably should know will violate the constitutional rights of his client, or if he acts with the malicious intention to injure his client. The touchstone is good faith. Id. at 322, 95 S.Ct. at 1000.
 
 
 11
 This degree of immunity from damage liability is justified for several reasons. It would be incongruous to grant such immunity to other public servants-such as police officers, school board members, prison officials, and state hospital superintendents-who regularly exercise their discretion in ways that touch upon constitutional rights, and to deny this protection to public defenders. Lawyers representing indigent clients should feel free to exercise in good faith their professional judgment to decline to press the frivolous claim and to make decisions regarding strategy and tactics. These are the reasons for which they are employed. If they are not afforded some protection, they may act with trepidation, and indigent defendants will be the ones who ultimately lose in the process. In addition, the law should not make it too difficult to recruit and hold vigorous and competent attorneys to represent indigent defendants. The grant of a qualified immunity is an appropriate compromise between these interests on the one hand, and the fundamental public interest in providing relief to indigent clients under § 1983 whose constitutional rights are violated. We hold, therefore, that in § 1983 suits attorneys employed by public defender offices enjoy the qualified immunity we have described for actions taken while representing indigent clients.
 
 III.
 
 12
 We will comment briefly about the potential liability of Polk County, the Polk County Board of Supervisors, and the Polk County Offender Advocate. The District Court dismissed the claim against the Offender Advocate for lack of state action, and we have found dismissal on this ground to be error. Whether the requisite personal involvement by the Offender Advocate in the claimed unconstitutional conduct was sufficiently alleged, however, is a separate issue which the District Court did not reach. Reading the allegations of the pro se complaint expansively, as we must, to determine whether relief might be justified on any possible theory, Haines v. Kerner, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972) (per curiam), we find that the complaint alleges that the Offender Advocate was responsible for Ms. Shepard's actions because he established rules and procedures for her to follow in handling criminal appeals. These allegations are sufficient, as a matter of pleading, to state a § 1983 claim against the Offender Advocate. Cf. Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690-95, 98 S.Ct. 2018, 2035-2038, 56 L.Ed.2d 611 (1978). Similar allegations were made as to the involvement of the Polk County Board of Supervisors, and we hold that the complaint is sufficient to state a claim against the Board members for the same reason.[5] These individuals, of course, will enjoy the same degree of immunity as the Offender Advocate and Ms. Shepard. Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). In addition, it may become clear, through discovery or otherwise, that the rules and procedures referred to in the complaint had nothing to do with Ms. Shepard's actions in Dodson's case. In that event, it may be appropriate to renew the no-personal-involvement defense by motion for summary judgment.
 
 
 13
 The final question is whether the complaint, liberally construed, states a cognizable claim against Polk County as an entity. Even though we interpret the allegations expansively, we are unable to say that the complaint alleges the necessary county involvement in the claimed unconstitutional conduct by virtue of the execution of county policy or custom.[6] Monell v. New York City Dept. of Social Services, supra, 436 U.S. at 694, 98 S.Ct. at 2037. The appellant did not have counsel in the District Court,[7] and was given no opportunity to meet any objections to the sufficiency of the complaint which might have been raised. On remand, the appellant should be given the opportunity to amend to state his claim against the County with more specificity. We intimate no opinion whether the County is entitled to any immunity.[8]
 
 IV.
 
 14
 The District Court was correct in dismissing the claim for an injunction commanding Dodson's release. This claim is in the nature of habeas corpus, and it is conceded that state remedies have not been exhausted. On this question, we affirm.
 
 V.
 
 15
 The judgment (except as noted in Part IV of this opinion) is reversed, and this case is remanded for further proceedings consistent with this opinion. On remand, the District Court should reinstate the pendent state-law claims, subject, of course, to appropriate action if the federal claims should later be dismissed for any reason.
 
 
 16
 Affirmed in part, reversed in part, and remanded.
 
 
 17
 OVERTON, District Judge, dissenting.
 
 
 18
 I disagree with the conclusion that a public defender representing an indigent defendant operates under color of state law, a jurisdictional requirement for an action under 42 U.S.C. § 1983.
 
 
 19
 The still valid test for determining whether a person is acting under color of state law is the language in United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1940) at Page 326, 61 S.Ct. at page 1043: "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." (emphasis added). See also, Monroe v. Pape, 365 U.S. 167, 183-87, 81 S.Ct. 473, 481-484, 5 L.Ed.2d 492 (1961); Williams v. United States, 341 U.S. 97, 99, 71 S.Ct. 576, 578, 95 L.Ed. 774 (1951); and Screws v. United States, 325 U.S. 91, 108-113, 65 S.Ct. 1031, 1038-1041, 89 L.Ed. 1495 (1945).
 
 
 20
 The alleged wrongs of defendant, Shepard, were not "made possible only because" she was a public defender. She could have rendered the same alleged ineffective assistance of counsel as a retained attorney or as an appointed counsel. All but one circuit considering the question have reached the conclusion that such a wrong is not under color of state law. Skipper v. Brummer, 598 F.2d 427 (5th Cir. 1979) (per curiam); Espinoza v. Rogers, 470 F.2d 1174 (10th Cir. 1972) (per curiam); Miller v. Barilla, 549 F.2d 648, 650 (9th Cir. 1977) (dictum); and Brown v. Joseph, 463 F.2d 1046, 1047-48 (3rd Cir. 1972) (dictum), cert. denied, 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973).[1] The Seventh Circuit, in Robinson v. Bergstrom, 579 F.2d 401 (7th Cir. 1978) (per curiam) stands alone with its decision to the contrary. Moreover, it seems fairly significant that the Robinson court, while stating that a public defender acts under color of state law, also held that the defender enjoys absolute immunity from suit rather than the qualified immunity which the majority confers in this case. Id. at 410-411.
 
 
 21
 The majority, in concluding that a public defender's relationship to the client is different from any other attorney, relies upon (1) the fact that the public defender is hired, paid and subject to fire by the county, and (2) the fact that the indigent defendant has no choice in selecting his lawyer. By the same token, a court appointed attorney is (1) usually selected and paid by the state and (2) is not usually the product of the indigent's selection. Yet, this circuit has consistently held that neither retained nor appointed attorneys are liable under 42 U.S.C. § 1983 for deprivation of constitutional rights, because they do not act under color of state law. Harkins v. Eldredge, 505 F.2d 802, 803 (8th Cir. 1974); Barnes v. Dorsey, 480 F.2d 1057 (8th Cir. 1973); Harley v. Oliver, 539 F.2d 1143, 1145-46 (8th Cir. 1976). See also, White v. Bloom, 621 F.2d 276 (8th Cir. 1980).
 
 
 22
 The reasoning for a conclusion that public defenders do not act under color of state law is best stated in Ferri v. Ackerman, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979). Although the issue in Ferri was the question of immunity for an attorney appointed by a Federal Court and paid for his services with federal funds, the decision addressed the argument that court appointment and payment with public funds changed the traditional attorney-client relationship. The Court answered the question by stating:
 
 
 23
 ". . . the primary office performed by appointed counsel parallels the office of privately retained counsel. Although it is true that appointed counsel serve pursuant to statutory authorization and in furtherance of the federal interest in incurring effective representation of criminal defendants, his duty is not to the public at large, except in that general way. His principal responsibility is to serve the individual interests of his client. Indeed, an indispensable element of the effective performance of his responsibilities is the ability to act independently of the government and to oppose it in adversary litigation." 444 U.S. at page 204, 100 S.Ct. at page 409.
 
 
 24
 In my view, there is simply no sound basis for distinguishing the public defender's role as attorney for his client from that of any other attorney because of the source of his remuneration. Indeed, the positions taken by the public defender are always adverse to those of the state. It is difficult for me to conclude that the public defender is acting under color of state law while entering "not guilty" pleas, moving to suppress state's evidence, objecting to evidence at trial, cross-examining state's witnesses and making closing arguments in behalf of defendants.
 
 
 25
 While I would decide the claim against Ms. Shepard on the initial jurisdictional point that the public defender does not act under color of state law and thus does not reach the merits of the immunity question, I am constrained to state my further disagreement with the majority on the matter of immunity from suit. Like the Seventh Circuit panel in Robinson v. Bergstrom, supra, I would hold that the public defender enjoys the same absolute immunity from suit as that of the prosecutor announced in Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1975).
 
 
 26
 My concern is that the present scheme of the law leaves the disgruntled 1983 claimant with one clear target for his anger and frustration with the criminal justice system. The judge and prosecutor are clearly immune from suit and the court appointed counsel is "not acting under color of state law," Ferri v. Ackerman, 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355. But the majority here has held that the claimant may vent his frustration by suing the public servant who defended him. It seems clear that policy reasons should counsel heavily against subjecting the public defender to such liability. Such officers are notoriously overworked and underpaid. Placing on them the burden of defending suits which are often without merit[2] can only make the job of finding competent, permanent staff for public defender offices more difficult. As Judge Anderson stated for the Ninth Circuit in Miller v. Barilla, supra, (holding the public defender absolutely immune under § 1983),
 
 
 27
 "Any qualified immunity doctrine would force defense of suits well through the pleading stages, and place a substantial drain on an already burdened legal services resource. Additionally, each public defender 'would be constrained to weigh every decision in terms of potential liability,' "
 
 
 28
 quoting Minns v. Paul, 542 F.2d 899 (4th Cir. 1976).
 
 
 29
 It should be noted that the Ninth Circuit in Miller, while holding the public defender absolutely immune under § 1983, did not reach the question whether the officer acts under color of state law. This may, of course, be criticized as a decision of the merits without first resolving a jurisdictional controversy. But it further illustrates the currently confused and conflicting state of the law in the various circuits. The Seventh and Eighth Circuits hold a public defender acts under color of state law, but the Seventh Circuit grants an absolute immunity while the Eighth gives a qualified one. The Fifth and Tenth Circuits say, in per curiam opinions, that a public defender does not act under color of state law. And the Ninth Circuit says the immunity of public defenders is absolute, therefore the question of color of state law need not be reached.
 
 
 30
 A true copy.
 
 
 
 *
 The Hon. William R. Overton, United States District Judge for the Eastern District of Arkansas, sitting by designation
 
 
 [1]
 E. g., Skipper v. Brummer, 598 F.2d 427 (5th Cir. 1979) (per curiam); Espinoza v. Rogers, 470 F.2d 1174 (10th Cir. 1972) (per curiam); United States ex rel. Wood v. Blacker, 335 F.Supp. 43, 47 (D.N.J.1971); Peake v. County of Philadelphia, 280 F.Supp. 853 (E.D.Pa.1968); Miller v. Barilla, 549 F.2d 648, 650 (9th Cir. 1977) (dictum); Brown v. Joseph, 463 F.2d 1046, 1047-48 (3d Cir. 1972) (dictum), cert. denied, 412 U.S. 950, 93 S.Ct. 3015, 37 L.Ed.2d 1003 (1973)
 
 
 [2]
 Cf. Robinson v. Jordan, 494 F.2d 793, 795 (5th Cir. 1974) (per curiam) (county health officer acted under color of state law where prisoner had no choice of doctor). We do not question the often-stated rule that a private attorney appointed by a state court to represent an indigent defendant does not act under color of state law. E. g., Harkins v. Eldredge, 505 F.2d 802 (8th Cir. 1974) (per curiam)
 
 
 [3]
 The District Court did not reach this issue, but it has been briefed in this Court and is purely a question of law. It is therefore appropriate for us to decide it now
 
 
 [4]
 In White v. Bloom, 621 F.2d 276, at 280 (8th Cir. 1980), we applied the logic and holding of Ferri in a § 1983 suit by an indigent defendant against his state-court-appointed lawyer. The state-action requirement, we said, would be satisfied by a sufficient allegation that appointed counsel conspired with state officials
 
 
 [5]
 There can be no question that the members of the Polk County Board of Supervisors, in carrying out the responsibilities of that office, act under color of state law
 
 
 [6]
 The portion of the complaint which names Polk County reads as follows: "Polk County is enjoined (sic -perhaps "joined" is meant) in this action because it is the political basis, and the source that authorized it's (sic ) political sub-divisions and it's (sic ) quasi-contractants to act in the manner prescribed in this complaint . . . ."
 
 
 [7]
 On remand, the District Court may wish to allow appointed appellate counsel to continue representing Dodson. The presence of counsel often makes it easier for district courts to manage and decide this kind of case expeditiously and fairly
 
 
 [8]
 Owen v. City of Independence, supra, held that municipalities have no qualified immunity under § 1983 for their good-faith constitutional violations
 
 
 [1]
 Additionally, these published District Court decisions support the conclusion that public defenders do not act under color of state law: United States ex rel. Wood v. Blacker, 335 F.Supp. 43, 47 (D.N.J.1971) and Peake v. County of Philadelphia, 280 F.Supp. 853 (E.D.Pa.1968)
 
 
 [2]
 The Reports of the Judicial Conference-Report of the Administrative Office, U. S. Courts, 1979, at 221-222, states that filings by state prisoners in civil rights cases increased to 11,195 in 1979, a 15.1% increase over 1978, and a 451.5% increase over 1970. The report of the Federal Judicial Center, 1980 Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts, at page 9, indicates that 96.5% of the § 1983 cases terminated in federal courts in 1979 were dismissed or otherwise concluded prior to trial