Billy Irl GLOVER, Plaintiff-Appellant,

v.

Bruce TOWER, Public Defender of Douglas County, Oregon and Gary Babcock, Public Defender of the State of Oregon, Defendants-Appellees.

No. 81–3199.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 7, 1982.

Decided March 1, 1983.

Marsha Hammack, Valarie Cooke-Skau, Northwestern Legal Clinic, Portland, Or., for plaintiff-appellant.

James E. Mountain, Jr., Asst. Atty. Gen., Salem, Or., for defendants-appellees.

Before GOODWIN, PREGERSON and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Glover appeals the district court's dismissal of his civil rights action. The complaint, which was filed by Glover pro se, alleged that the public defenders who represented him in a prior state criminal action violated the provisions of 42 U.S.C. §§ 1981, 1982, 1983 and 1985(3) by conspiring with various public officials to violate his constitutional rights. The district court held that Glover had failed to state a claim upon which relief could be granted and dismissed his action.

Glover alleged that his public defenders at trial and on appeal violated his constitutional rights by conspiring with the trial judge, the Oregon Court of Appeals and other named and unnamed state officials to secure his conviction on a felony charge brought by the State of Oregon. He alleged that defendant Tower intentionally failed to obtain evidence to support his de-

fense of mental defect and refused to withdraw as counsel to allow Glover to represent himself. He further alleged the existence of a conspiracy between Tower and the trial judge to secure his conviction. In furtherance of that conspiracy, the trial judge allegedly denied Glover's motions for new counsel and for a new trial. The Oregon Court of Appeals is alleged to have participated in the conspiracy by accepting defendant Babcock's appellate brief over Glover's objections and by refusing to allow Glover to represent himself during the appeal.

Glover also alleged that Babcock, as public defender administrator, appointed himself to represent Glover on appeal to insure that his conviction would be upheld. Similarly, he alleged that Judge Lee Johnson had himself placed on the panel which was to hear Glover's appeal to insure that his conviction would be affirmed. Judge Johnson had been attorney general at the time of Glover's trial and was named to the Oregon Court of Appeals during the interim.

■ The district court held that Glover had failed to allege anything in the nature of racial discrimination, necessary for section 1981 and 1982 claims, or the type of class-based discrimination necessary for a section 1985(3) claim. No extended discussion of these holdings is required. The district court was correct and that portion of its judgment is affirmed. *See London v. Coopers & Lybrand,* 644 F.2d 811, 818 n. 4 (9th Cir.1981); *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). Glover's contention on appeal that he was treated less favorably as an indigent than he would have been had he been affluent enough to retain his own lawyer does not, in our view, make out a proper class-based 1985(3) claim.

The district court also held that Glover's remaining claim under section 1983 failed to state a cause of action because public defenders are absolutely immune from suit under section 1983. That portion of the court's ruling was error and we reverse.

In *Miller v. Barilla,* 549 F.2d 648 (9th Cir.1977), this court adopted the rationale of *Minns v. Paul,* 542 F.2d 899 (4th Cir.), *cert. denied,* 429 U.S. 1102, 97 S.Ct. 1127, 51 L.Ed.2d 552 (1976), and announced a rule of absolute immunity for public defenders under section 1983. We reasoned that absolute immunity would encourage able lawyers to represent indigents and encourage counsel in "the full exercise of professionalism . . . ." *Miller v. Barilla,* 549 F.2d at 649 (*quoting Minns v. Paul,* 542 F.2d at 901). We concluded that there was no valid reason to treat public defenders differently from prosecutors and judges in this regard.

■ The district court understandably felt itself bound by *Miller.*[1] Our review of a subsequent Supreme Court case, *Ferri v. Ackerman,* 444 U.S. 193, 100 S.Ct. 402, 62 L.Ed.2d 355 (1979), has convinced us that *Miller* is no longer good law. In *Ferri,* the Court held that an attorney appointed to represent an indigent criminal defendant in a federal prosecution was not entitled, as a matter of federal law, to absolute immunity in a subsequent state malpractice action. The Court explained that appointed counsel are subject to the same duties and obliga-

---

1. The district court did not address the preliminary issue of whether Glover alleged that defendants acted under color of state law. "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981). Thus a suit alleging constitutional violations on the part of a public defender acting alone would not state a claim under section 1983. In this case, however, Glover alleged that the public defenders conspired with state officials. Private parties who conspire with a state official acting in his official capacity do act under color of state law. *Dennis v. Sparks,* 449 U.S. 24, 29, 101 S.Ct. 183, 187, 66 L.Ed.2d 185 (1980). In *Sparks,* the Court held that a complaint which alleged a conspiracy between a state judge and two private defendants to cause an injunction to be corruptly issued, satisfied the color of state law requirement. Glover's allegations of conspiracy were somewhat vague. On remand the district court may require more specificity, but at this stage we are satisfied that Glover's allegations of color of state law are not fatally deficient on their face.

tions as retained counsel. The Court distinguished the public defender from a judge or prosecutor, noting that the latter serve broad societal interests and are subject to conflicting claims. Immunity is necessary to forestall an atmosphere of intimidation, and to insure that they have maximum ability to deal fearlessly with the public. In contrast, the public defender is obligated to serve the undivided interest of his client. *See Sellars v. Procunier*, 641 F.2d 1295, 1299 n. 7 (9th Cir.), cert. denied, 454 U.S. 1102, 102 S.Ct. 678, 70 L.Ed.2d 644 (1981); *see also Polk County v. Dodson*, 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (public defender is the functional equivalent of a privately retained attorney).

*Ferri* did not actually overrule *Miller* because the issue presented was limited to federal preemption of state law governing immunity in malpractice actions. *See Black v. Bayer*, 672 F.2d 309 (3d Cir.1982) (reaffirming rule of absolute immunity for public defenders). Nonetheless, the *Ferri* Court's refusal to extend the immunity accorded judges and prosecutors to appointed counsel undercuts the basis for *Miller*. *See Hall v. Quillen*, 631 F.2d 1154 (4th Cir.1980) (*Ferri* casts considerable doubt on the continuing validity of *Minns*), cert. denied, 454 U.S. 1141, 102 S.Ct. 999, 71 L.Ed.2d 293 (1982); *White v. Bloom*, 621 F.2d 276, 280 (8th Cir.1980) (public defenders subject to suit under section 1983), cert. denied, 449 U.S. 995, 101 S.Ct. 533, 66 L.Ed.2d 292 (1980), 449 U.S. 1089, 101 S.Ct. 882, 66 L.Ed.2d 816 (1981).

We conclude that *Miller* cannot survive the rationale of *Ferri*, and that *Ferri* and *Polk County v. Dodson, supra,* are inconsistent in principle with any immunity, qualified or absolute, of public defenders charged with conspiring with state officials in violation of 42 U.S.C. § 1983. We reach this conclusion with some reluctance, because we are mindful of the burden our decision may place on already-overburdened public defenders' offices. Nevertheless, we can construe *Ferri* and *Polk County* no other way.

AFFIRMED in part, REVERSED in part and REMANDED.